The Chicago and Northwestern Railway Company vs. James and another.

*Principal and agent.*

The facts that the vice-president of a railway company had been for years in the habit of appointing local agents to look after its timbered lands; that these had sold stumpage and timber thereon; that the company had brought suit on one of these contracts of sale, and obtained judgment, the amount of which was paid to the local agent; that the latter was accustomed each year to make a full report in writing to said vice-president, and pay the moneys in his hands into the treasury of the company — would authorize a jury to find that the company knew and acquiesced in the authority thus exercised, and was bound by such a contract of sale made by its local agent.

APPEAL from the Circuit Court for *Winnebago* County.

Action for damages for the conversion by defendants to their own use (at Oshkosh, in June, 1866), of certain logs, alleged to have been the property of the plaintiff. The logs were cut by one Weatherby on lands belonging to plaintiff, between December 1, 1865, and March 1, 1866, and were delivered by him to defendants at Oshkosh, in pursuance of a contract into which he had entered for the sale and delivery of timber to them. It appears that, in November, 1865, one McGillan, while acting (under appointment by Perry H. Smith, Esq., then vice-president of the plaintiff company) as agent of said company for the protection, etc., of its lands in this state, executed and delivered to Weatherby a written instrument, by which he purported to sell to the latter the timber on said land, in consideration of a certain sum of money paid him by Weatherby. It appears that this money was never paid over by McGillan to the company. There was a good deal of evidence as to McGillan's authority to sell, including testimony as to sales of a similar character made by one Foote, his predecessor in said agency. The general effect of this evidence, as preserved in the bill of exceptions, is sufficiently stated in the opinion.

The following instructions, asked by plaintiff, were refused: 1. If Smith testifies that he never authorized McGillan to sell stumpage, and if McGillan had no authority except what he got from Smith, that is conclusive evidence that he had no such authority, even if he did make sales of stumpage which the company ratified, or if Foote made sales, and the company received the proceeds. 2. If Foote made five or six sales of stumpage, which were ratified by the company, that is not sufficient to bind it for unauthorized sales made by McGillan. 3. The mere fact that Foote sold stumpage in five or six cases, and McGillan in two or three, which the company ratified, will not authorize you to find an implied agency on the part of McGillan, even if Weatherby had notice thereof. 4. The mere fact that Smith authorized Foote

to sell in five or six cases, and the company ratified the same by receiving the proceeds, will not authorize you to find an implied agency.   5. There is no evidence that McGillan had any authority from plaintiff to sell this stumpage to Weatherby.   6. There is no evidence that Perry H. Smith had any authority to sell stumpage on plaintiff's land.   7. (Same as 5.)   8. There is no evidence that plaintiff ever ratified the act of McGillan in selling this stumpage to Weatherby.   9. There is no evidence that plaintiff ever ratified any sale of stumpage by McGillan.   10. If these logs were taken from said land without any authority, and unlawfully, by Weatherby, for defendants, and they countenanced and assisted him in taking off the same, they are liable therefor, even if they had not possession of them at the time of the demand, or the commencement of this suit.   11. If Weatherby cut this stumpage unlawfully, and defendants furnished means to cut the same, and they were cut with the understanding that defendants should have them, and defendants did get them, then you may find defendants joint trespassers with Weatherby, and they are liable in trover from the time of the conversion.   12. The mere fact that the company received the purchase-money from five or six sales made by Foote, is no evidence that McGillan had any authority to sell stumpage ; and, by reason thereof, the company is not bound by McGillan's acts.   13. The mere fact that the company received money on sales made by Smith, in five or six instances, is not sufficient to establish that Smith had authority to sell stumpage.   14. That fact is not sufficient to make the company liable for the acts of Smith in selling stumpage. 15. If Weatherby cut these logs unlawfully, and mixed them with his own, plaintiff is entitled to the amount taken, from the mixed logs.   16. If defendants converted the goods, and plaintiff was the owner, they are liable. 17. [Defines a conversion.]   18. If Weatherby cut and took the logs from said land unlawfully, under an arrangement with defendants that they should have the

same, and they advanced means to him for that purpose, they are co-trespassers with him, and are liable for the logs without demand, and even if they were not in possession at the commencement of this suit.

The jury, by a special verdict upon issues submitted to it by the court, at defendants' request, found that no demand was made for the logs in dispute after they came into defendants' possession·; that defendants were in possession of 70,000 feet thereof when this action was commenced ; and that they came into possession in good faith, and were the *owners* at the commencement of the suit. Motion for a new trial denied ; and judgment rendered for the defendants ; from which the plaintiff appealed.

*Gabe Bouck*, for appellant, contended that there was no evidence of any authority on the part of McGillan to make sales of stumpage, but conclusive proof that he had no such authority. It is however claimed, that, by reason of certain facts proven, the company are estopped from denying his agency for that purpose. But defendants cannot rely upon any previous recognition by the company of Foote's or McGillan's acts, unless Weatherby contracted with McGillan on the faith thereof, of which there was no evidence whatever. *St. John v. Redmond*, 9 Port. 428, 633 ; *Johnson v. Jones*, 4 Barb. 369, 373 ; *Hooe v. Oxley*, 1 Wash. 19 ; *Wilkins v. Commercial Bank*, 6 How. (Miss.) 217, 231 ; *Stothard v. Aull*, 7 Mo. 318 ; *Walsh v. Pierce*, 12 Vt. 130, 138 ; *Dows v. Green*, 24 N. Y. 638 ; *Schimmelpennich v. Bayard*, 1 Pet. 264, 290.

*Earl P. Finch*, for respondents :

The facts proven were competent evidence, from which the jury might presume the agency of McGillan, and the nature and extent of his authority. 4 Greenl. 503 ; *Whitehead v. Tuckett*, 15 East, 400 ; *Cox v. Hoffman*, 4 Dev. & Bat. 180 ; *Plimmer v. Sells*, 3 Nev. & Man. 422 ; Dunlap's Paley, 162 *et seq. ; Hazard v. Treadwell*, 1 Strange, 506 ; Smith's Master and Servant,

126.   The apparent authority with which an agent is clothed, is his real authority. 2 Hill, 270 ; 16 N. Y. 137, 138 ; Story on Agency; §§ 60, 73, 85 ; Dunlap's Paley, 161, 162, 166, 167.

COLE, J.   The bill of exceptions in this case does not profess to contain all the testimony introduced on the trial, nor all the instructions given the jury.   It does contain, however, a number of instructions which were asked by the plaintiff and refused.   Some of these instructions were clearly erroneous, because they required the court to pass upon the weight of evidence and questions of fact.   Others again, however correct they may be as propositions of law, became immaterial in view of the special verdict of the jury.   This is emphatically the case with the tenth, eleventh, fifteenth, sixteenth, seventeenth and eighteenth instructions.

These instructions, which chiefly relate to the principles of law that govern in actions of trover and the conversion of personal property, are obviously inapplicable to this case, where the jury find that the defendants bought the logs in good faith, and were the owners of them at the time the suit was commenced.   In reaching this result, it is very manifest that the jury must have been satisfied from the evidence that the local agents either had original authority from the company to sell the timber upon its lands, or were fairly warranted in presuming such authority from the repeated acts of the agents in selling the stumpage, which had been adopted and confirmed by the company.   And that there was testimony from which the jury might reasonably presume that the company authorized these acts of selling stumpage and timber by its agents, or afterward sanctioned and confirmed these sales, receiving the proceeds, the bill of exceptions, even as it now stands, abundantly shows.   For it certainly contains testimony which tends to show that these railroad lands had been under the charge and supervision of Mr. Smith, the

vice-president and one of the directors of the company, for a number of years; that Mr. Smith had been in the habit of appointing local agents to look after them; that these local agents had sold stumpage and timber; that the company brought suit upon one of these contracts of sale, and obtained judgment, and the amount of the judgment after deducting the expenses was paid to the agent Foote; and that Foote was accustomed each year to make a full statement and report in writing to Mr. Smith, and pay any surplus moneys in his hands into the treasury of the company. From this testimony the jury might well have presumed that the authority which Mr. Smith, and the local agents appointed by him, exercised over these lands, was fully known to the directors of the company, and that it was tacitly acquiesced in and sanctioned by them. If so, the company would be bound by these acts of its agents. It appears that the proceeds of the sales of stumpage and timber made by Smith and Foote have gone into the treasury of the company. This alone is strong evidence of the ratification of such sales made by the agents. *Despatch Line of Packets v. Bellamy Man. Co.*, 12 N. H. 206–237, and cases there cited. The company ought not to be permitted to avail itself of the money arising from these sales, and at the same time repudiate the sales as unauthorized. It is true the sale of the timber in the present case was made by McGillan, who has neglected or refused to account to the company for the moneys which he has received. But the evidence shows that Foote and McGillan had the same power and authority in respect to these lands; and if the company did not deny the agency of the former to sell the timber and bind it by such contracts, the authority of the latter to do the same things might well be inferred. And the jury must have reached the conclusion upon the facts, that McGillan was authorized to make the sale of the timber to Weatherby; otherwise they could not have found that

the defendants were the owners of the logs at the commencement of the suit. We do not deem it necessary to go through and notice in detail the instructions asked and refused on the part of the plaintiff. As already observed, many of them ask the court to charge in respect to matters of fact or the weight of evidence, while others became immaterial in view of the special verdict.

*By the Court.* — The judgment of the circuit court is affirmed.